UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TATIANA KOZLENKO,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03194<br><br>ORDER |

## I

## INTRODUCTION

This matter comes before the Court on Tatiana Kozlenko's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II

## BACKGROUND

Petitioner is a citizen of Russia. Dkt. # 6-1 at 2. She entered the United States on April 6, 2022, and applied for admission at a port of entry in San Ysidro, California. Dkt. # 6-1. The next day, Petitioner was issued an NTA classifying her as an "arriving alien." Dkt. # 1-4 at 2.

The NTA charged Petitioner as removable under Section 212(a)(7)(A)(i)(I) of the INA. Dkt. # 1-4 at 5. After initially detaining Petitioner, immigration authorities released her on humanitarian parole under Section 212(d)(5) of the INA. Dkt. # 6-1; Dkt. # 5 at 2. The parties agree that this parole was set to expire on April 4, 2023. *See* Dkt. # 1 at 10; Dkt. # 4 at 2.

Petitioner then lived in the United States for four years, marrying a United States citizen and starting a daycare business. Dkt. # 1 at 7; Dkt. # 1-9. Petitioner's husband filed an I-130 Petition for Alien Relative on her behalf that is still pending. Dkt. # 1-8; Dkt. # 5 at 3. Petitioner also has a pending application to register as a permanent resident. Dkt. # 5 at 3.

On August 18, 2026, Petitioner received a letter from the Department of Homeland Security (DHS) requesting that she attend an in-person check in on September 2, 2026, to "discuss [her] Immigration Case." Dkt. # 1-6. On September 2, 2026, Petitioner went to the check in and ICE detained her. Dkt. # 5 at 3. The Government states that Petitioner was detained because "[d]uring routine inquiries of DHS systems, ERO officers discovered Petitioner had moved from California to Seattle without reporting to the ERO Seattle Field Office." Dkt. # 5 at 3.

The day she was detained, Petitioner received an NTA stating that she was "an alien present in the United States who has not been admitted or paroled." Dkt. # 1-7 at 2-4. Later that day, Petitioner received another NTA stating that she was "an arriving alien." Dkt. # 6-3 at 2. Both NTAs again charged Petitioner as removable under INA § 212(a)(7)(A)(i)(I). Dkt. # 1-7 at 5; Dkt. # 6-3 at 5.

Petitioner is currently detained at the Northwest ICE Processing Center (NWIPC). Dkt. # 5 at 3. Petitioner alleges that on September 25, 2026, an immigration judge (IJ) denied her bond

"because Petitioner is classified as an arriving alien and is therefore ineligible for an IJ custody redetermination." Dkt. # 7 at 8.

## III

## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### A. Statutory Violation

Petitioner first argues that the Respondents violated the INA and its implementing regulations by re-detaining her without prior written notice or an individualized determination. Dkt. # 1 at 8-15.

Under 8 U.S.C. § 1225, a noncitizen "present in the United States who has not been admitted or who arrives in the United States" is an "applicant for admission" and is subject to mandatory detention. 8 U.S.C. § 1225(a)(1), (b)(1)-(b)(2). Applicants for admission may be released only on humanitarian parole, which is granted "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). To be released on humanitarian parole, a noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b).

"Humanitarian parole may be terminated in two ways; each with their own procedural requirements." *Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026). Humanitarian parole automatically terminates "if the noncitizen leaves the United States

or the parole term has expired." *Zaika v. Field Off. Dir.*, 2026 WL 1194625, at *2 (W.D. Wash. May 1, 2026) (citing 8 C.F.R. § 212.5(e)(1)). Otherwise, parole terminates if the purpose of the parole been accomplished or when a DHS official with authority decides that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i). Under this discretionary termination, the noncitizen must be provided with written notice of the parole termination. *Id.*

Once a noncitizen's parole has been terminated under either of these methods, "any order of exclusion, deportation, or removal previously entered shall be executed." *Id.*; *see also* 8 C.F.R. § 212.5(e)(1). If this cannot be accomplished "within a reasonable time, the [noncitizen] *shall again be released on parole*" unless an authorized DHS official decides that "the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see Caisa Telenchana*, 2026 WL 696806, at *7 ("unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official"). Pursuant to this regulatory scheme, courts in this District have repeatedly held that "where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Caisa Telenchana*, 2026 WL 696806, at *7 (citing *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026)); *see also Torres-Fernandez v. Mullin*, 2026 WL 2874074, at *3 (W.D. Wash. Sept. 24, 2026); *Len Nava v. Mullin*, 2026 WL 2294576, at *3 (W.D. Wash. Aug. 10, 2026).

Respondents first argue that Petitioner's parole automatically expired, so she is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to habeas relief.[1] Dkt. # 4 at 5. But courts in this District have rejected this argument. *See P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained."); *Musaev v. Hermosillo*, 2026 WL 925611, at *4 (W.D. Wash. Apr. 6, 2026).

Respondents next argue that they were not required to provide Petitioner with written notice before re-detention because her humanitarian parole automatically expired. Dkt. # 4 at 6. The parties agree that Petitioner's parole expired on April 4, 2023. *See* Dkt. # 1 at 10; Dkt. # 4 at 2. But Respondents did not re-detain Petitioner for about three years after this date. Dkt. # 5 at 3. Accordingly, the Court finds that continuation of Petitioner's humanitarian parole was implied and she was entitled to the written notice requirement in 8 C.F.R. § 212.5(e)(2)(i).

Respondents also contend that even if Petitioner's parole did not automatically expire, it was properly terminated by service of the NTA on September 2, 2026. Dkt. # 4 at 6-7. But it is unclear from the record whether Petitioner received the NTA before or after ICE detained her.

[1] Respondents argue that the Court should deny the petition because Petitioner "failed to exhaust her administrative remedies." Dkt. # 4 at 5. But Respondents do not explain what administrative remedies Petitioner should seek. Respondents then say that even if Petitioner is detained under 8 U.S.C. § 1225(a), "she has not been denied a hearing due to [her] mandatory detention status as she is scheduled for a bond hearing." Dkt. # 4 at 5. Petitioner clarifies that at a hearing on September 25, 2026, an IJ denied her bond "because Petitioner is classified as an arriving alien and is therefore ineligible for an IJ custody redetermination." Dkt. # 7 at 8. Accordingly, the Court does not see how requiring Petitioner to exhaust administrative remedies would not be futile. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture.").

*See* Dkt. # 5 at 3. And courts in this District have found that issuance of an NTA after detention does not fulfill the notice requirement in 8 C.F.R. § 212.5(e)(2)(i). *See Uisimbayev v. Scott*, 2026 WL 2797987, at *5 (W.D. Wash. Sept. 18, 2026); *Zaika*, 2026 WL 1194625, at *3 (finding that an NTA does not satisfy the written notice requirement, in part, because it was served on petitioner after he was arrested and detained).

Nor is there any evidence in the record that the purposes for which Petitioner's parole was authorized had been accomplished or that an authorized DHS official determined that "neither humanitarian reasons nor public benefit warrants the continued presence of [Petitioner] in the United States." 8 C.F.R. § 212.5(e)(2)(i); 8 U.S.C. § 1182(d)(5)(A); *see Sanchez Silva v. Warden Nw. Det. Ctr.*, 2026 WL 925640, at *2 (W.D. Wash. Apr. 6, 2026) ("DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served."). The NTA from September 2, 2026, does not provide a reason for the revocation of Petitioner's parole. *See* Dkt. # 1-7; Dkt. # 6-3. And though the Government states that it revoked Petitioner's parole because she failed to update her location, Dkt. # 5 at 3, "the Government has adduced no evidence and cited no authority by which the court may conclude that such a violation constitutes grounds for revoking Petitioner's parole." *Sanchez Silva*, 2026 WL 925640, at *3.

Accordingly, the Court concludes that the Respondent's revocation of Petitioner's humanitarian parole and re-detention of Petitioner without written notice or an individualized determination violated 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i).

B. Due Process Violation

Petitioner also contends that her re-detention without notice or the opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the United States Constitution,

which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" Dkt. # 1 at 15. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

1. Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." 424 U.S. at 335. Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see*

*Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Accordingly, Petitioner has a liberty interest in being free from detention. This interest is even stronger because Petitioner lived freely in the United States for four years, marrying a United States citizen and starting a daycare business. Dkt. # 1 at 7; Dkt. # 1-9. Respondents broadly argue that noncitizens have a reduced liberty interest in remaining free from detention. Dkt. # 4 at 8-9. But Respondents do not distinguish this case from the many cases in this District concluding that petitioners released on humanitarian parole have a liberty interest in their continued freedom from detention. *See, e.g.*, *Caisa Telenchana*, 2026 WL 696806, at *11; *Amatbek Uulu v. Scott*, 2026 WL 865813, at *5 (W.D. Wash. Mar. 30, 2026); *Dieng*, 2026 WL 411857, at *7. Accordingly, the first *Mathews* factor favors Petitioner.

2. Risk of Erroneous Deprivation Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335.

Respondents argue that risk of Petitioner's erroneous deprivation is low because her parole expired either automatically on April 4, 2023, or was properly terminated by service of the NTA on September 2, 2026. Dkt. # 4 at 9. But when a noncitizen is detained after being released on humanitarian parole, "due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] must be given the opportunity to be heard with respect to the government's basis for

re-detention at a meaningful time and in a meaningful manner." *Flores Torres v. Hermosillo*, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026) (citation modified).

Here, as described above, Respondents did not comply with the INA and its implementing regulations when they re-detained Petitioner after she was released on humanitarian parole without written notice or an individualized determination. And "[t]he risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained." *Amatbek Uulu*, 2026 WL 865813, at *6; *Caisa Telenchana*, 2026 WL 696806, at *7 (the Government's failure "to comply with regulatory requirements for revoking humanitarian parole . . . heightens the risk of erroneous deprivation.").

Respondents also argue that "where no form of conditional release or active removal proceeds exist, noncitizens are not entitled to a pre-deprivation hearing prior to detention." Dkt. # 4 at 8. But courts in this District have found that, for due process purposes, petitioners who were re-detained after release on humanitarian parole were entitled to a pre-deprivation hearing. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *Singh v. Bondi*, 2026 WL 799706, at *7 (W.D. Wash. Mar. 23, 2026); *Sanchez Silva*, 2026 WL 925640, at *4. Here, there is no evidence on the record that Petitioner had a hearing before ICE detained her.

Accordingly, the second *Mathews* factor favors Petitioner.

3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." 424 U.S. at 335. There is a "heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206.

Respondents argue that the government has an interest in efficient enforcement of immigration laws and ensuring Petitioner's appearance at removal proceedings. Dkt. # 4 at 9-10. But the Government's interest in re-detaining noncitizens released on humanitarian parole "without first complying with 8 C.F.R. § 212.5 is minimal: any administrative or financial burdens in complying with the regulations are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *Kozlenkko v. Hernandez*, 2026 WL 2905404, at *6 (W.D. Wash. Sept. 28, 2026); *see also Dieng*, 2026 WL 411857, at *8 ("'the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations.'" (quoting *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 405 (E.D.N.Y. 2025) (citation modified)). This *Mathews* factor also weighs in favor of Petitioner.

. . .

In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner in violation of 8 C.F.R. § 212.5 and without a pre-deprivation opportunity to be heard violates the due process protections afforded to her by the Constitution. As a result, Petitioner has proven by a preponderance of the evidence that she "is in custody in violation of the Constitution or laws or treaties of the United States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

C. Remedy

The Court finds that release is the appropriate remedy. Where, as here, a petitioner was detained without notice or a pre-deprivation hearing in violation of due process, the detention is

"unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026); *Kirykovich v. Hernandez*, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to the conditions that existed before his unlawful detention.") (emphasis in original). Courts have also provided the same relief specifically considering 8 C.F.R. § 212.5 violations. *See Kozlenkko*, 2026 WL 2905404, at *6.

## IV

## CONCLUSION

For these reasons, the Court GRANTS the habeas petition (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to the same conditions of release as her previous parole. The Court further ORDERS that Petitioner shall not be re-detained until after a hearing before a neutral decisionmaker and adequate notice.

Petitioner also requests attorney fees and costs under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(1)(B). Accordingly, Petitioner may file a motion with such request no later than November 6, 2026.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

//

//

//

//

Dated this 7th day of October, 2026.

John H. Chun
United States District Judge